Argued and submitted January 20, affirmed June 9, reconsideration denied
September 1, petition for review denied October 26, 1993 (318 Or 25)

FIRST INTERSTATE BANK
OF OREGON, N.A.,
Personal Representative of
the Estate of Laura M. Mason, Deceased.
*Respondent,*

*v.*

Carrie YOUNG,
Betty Brader, Phyllis Holm, Diane Peiper,
Warren S. Dahl, Susan Ford, Pamela Corder,
Jack Dobbs Hillman, Bennett B. Hillman,
Joseph R. Dahl, Vernon E. Dahl and Ethel Snare,
*Respondents,*

Hazel AASEN
and Phyllis Maxine Steele,
*Defendants,*

*and*

Richard Anthony DAVIS
and Phillip Charles Davis,
*Appellants.*

(CC 90-48; CA A71103)

853 P2d 1324

Wade P. Bettis, Canby, argued the cause and filed the briefs for appellants.

William G. Dick II, The Dalles, argued the cause for respondents Betty Brader, Phyllis Holm, Diane Peiper, Warren S. Dahl, Susan Ford, Pamela Corder, Joseph R. Dahl, Vernon E. Dahl and Ethel Snare. With him on the brief was Dick & Dick, The Dalles.

Mark E. Pengilly, Portland, argued the cause and filed the brief for respondents Jack Dobbs Hillman, Bennett B. Hillman and Carrie Young.

Robert Cole Tozer, Eugene, filed a brief *amici curiae* for Professor Leslie Harris and Associate Professor Caroline Forell.

No appearance by respondent First Interstate Bank of Oregon, N.A.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

This is a declaratory judgment action brought by trustee First Interstate Bank to determine the distribution of the residue under a will. Defendants Richard Anthony Davis and Phillip Charles Davis (the Davises) appeal from the judgment that declared that the will of Laura M. Mason did not dispose of her residuary estate and ordered that the residuary estate pass by intestate succession. We affirm.

The will is dated July 13, 1978. It contains two dispositive provisions. Paragraph III disposes of personal property by giving it all to decedent's husband, unless he predeceases her, in which case it goes to her trustee, leaving to the trustee's discretion whether to distribute the property to decedent's nieces and nephews or to sell it and add the proceeds to the residuary estate.[1]

The provision in dispute is Paragraph IV, which provides, in pertinent part:

"I give and devise all the rest, residue and remainder of my estate to the FIRST NATIONAL BANK OF OREGON, a national banking association, in trust, on the terms and conditions and for the uses and purposes hereinafter provided:

"(A)   If I am survived by my husband, CLIFFORD VIR-GIL MASON, my Trustee shall set aside in a separate trust,

---

[1] Paragraph III provides:

"I give and devise to my husband, CLIFFORD VIRGIL MASON, all my interest in our household goods and furnishings, my wearing apparel, jewelry and personal effects, and any automobile or automobiles owned by me at the time of my death, together with all unexpired insurance on all such personal property, including insurance obtained or renewed by my Personal Representative, provided that my said husband survives me and does not die within 90 days of my death. Should my said husband predecease me, the foregoing devise to him shall lapse, and in lieu thereof I give and devise all of the aforesaid personal property to my Trustee hereinafter named. My Trustee shall have authority in its sole discretion to preserve and retain any of such assets which it may consider to be of particular interest or value to my nieces and nephews for sentimental or other reasons; or distribute such assets to them irrespective of age and without the intervention of a guardian; or sell and convert into cash any part of such personal property not thus distributed or retained for future distribution, and shall add the proceeds thereof to the assets of my residuary estate. No assets distributed under the provisions of this article shall be a charge against the ultimate distributive share of any of my beneficiaries."

which shall be known as the MARITAL TRUST, that fractional share of the residue of my estate subject to administration by my Personal Representative which, when added to the value of property which otherwise than by the terms of this paragraph passes or shall have passed to my husband under terms such that it will qualify for the marital deduction, shall equal 50 per cent of my adjusted gross estate or $250,000.00, whichever is greater, for federal estate tax purposes.

"* * * The Marital Trust shall be administered for the following purposes:

"(1)  The net income shall be paid in monthly installments for the benefit of my husband during his lifetime. * * *

"(2)  Upon the death of my husband, all the property in the Marital Trust, including principal and all accrued and undistributed income shall be distributed as my husband shall appoint by her [sic] Last Will, which power may be exercised by him in favor of his estate. If the power is not so exercised by him it shall be distributed to the following persons:

"A one-fourth share to RICHARD ANTHONY DAVIS;
A one-fourth interest to PHILLIP CHARLES DAVIS;

"A one-eighth interest to PHYLLIS MAXINE STEELE;
A one-eighth interest to HAZEL AASEN;
A one-eighth interest to JACK DOBBS HILLMAN; and
A one-eighth interest to BENNETT BRUCE HILLMAN."

Nothing in Paragraph IV expressly provides for disposition of the residue if decedent were not survived by her husband or disposes of any part of the residue not allocated to the marital trust even if decedent *were* survived by her husband. Decedent's husband did not survive her.

The trustee brought this action to determine the effect of Paragraph IV and whether decedent died testate or intestate. Three motions for summary judgment were filed.

The Davises' motion argued that the language of the will clearly manifested decedent's intent that the estate be distributed to the beneficiaries specified in Paragraph IV, one-fourth to each Davis and one-eighth each to Steele, Aasen and each Hillman. They also argued that the will was ambiguous as to the existence of a separate and specific residuary clause and that the deposition of decedent's attorney provides

evidence that decedent's will originally contained a residuary clause distributing the residual estate to the six people listed in Paragraph IV. The Davises also attached to the motion a Will Information Sheet and other notes from the attorney's file.

During his deposition, the attorney described his recollection of his meetings with the Masons and presented his Will Information Sheet dated April 6, 1978, and a hand-written note from his file. He had never met the Masons before their April 6 meeting. Decedent did not say much at the April 6 meeting, and her husband said that if decedent did not survive him, half would go to his designated relatives and half to hers.

The following is written under the section entitled "Specific Bequests" in the attorney's Will Information Sheet: "Want all to go to wife and if she does not succeed then to" followed by the names Richard Anthony Davis and Phillip Charles Davis with a notation "1/2 to these"; then followed by the names "Phillis Maxine Steele [sic], Hazel Aasen, Jack Dobbs Hillman, Bennett Bruce Hillman" with the notation "1/2 to these 4." The handwritten note from the attorney's file has the names of Jack Dobbs Hillman and Bennett Bruce Hillman on one side, and the names of the two Davises on the other side.

The attorney described a residuary clause that he said had been in both decedent's and her husband's wills. He stated that his secretary deleted the residuary clause from both wills, and that he was not at the execution of decedent's will, so that he did not notice the deletion. He testified that, in the residuary clause, half the estate went to decedent's side of the family and half to her husband's side.

Defendants Hillman and Young argued in their motion that the will was not ambiguous, that the testamentary trust created by the residuary clause had lapsed and that the residue must be distributed by the laws of intestate succession. Defendants Brader, Holm, Peiper, Ford, Corder, Snare and the three Dahls filed a motion for summary judgment, arguing that decedent died intestate. The court granted the motions that argued for intestate succession, holding that the will was not ambiguous as a matter of law,

that the extrinsic evidence offered by the Davises could not be considered, and that decedent died intestate as to the residue of her estate.

■ Evidence extrinsic to a will is allowed "to explain an ambiguity, intrinsic or extrinsic." ORS 41.740; *Raymond v. Lillegard*, 35 Or App 225, 229, 580 P2d 1078 (1978). Defendants Davis argue that the will is ambiguous because it does not have a separate or specifically labelled residuary clause as is customary in professionally drawn wills. They point to references throughout the will to the residue of decedent's estate and to beneficiaries as evidence that a more complete disposition of the residuary estate was intended. They argue that the will should have had a separate residuary clause that distributed the residue to the same six people listed as contingent beneficiaries to the marital trust.

We considered a similar issue in *Murphy v. Powers*, 87 Or App 659, 743 P2d 777 (1987). The will in *Murphy* provided that all of the residue was to go into a trust for the benefit of the decedent's son and his wife during their lifetimes. It directed that the trust would terminate on the death of decedent's son, and the corpus distributed to named beneficiaries. The residuary clause did not provide for the possibility that the son would predecease the mother, which he did.

There was no extrinsic evidence presented in *Murphy*. However, the court dealt with the question of ambiguity in response to the argument that it should construe the will as though the named beneficiaries of the trust had been named beneficiaries of the residue. We held that the will and its residuary clause were unambiguous and not susceptible to construction, that there was no provision for any beneficial interest if the trust did not come into existence and that, because the son predeceased the mother, the trust did not come into existence and any gift through the trust lapsed. 87 Or App at 662.

The Davises argue that this case is distinguishable from *Murphy*, because the will in *Murphy* included no reference to the possibility that the decedent's son might predecease her. In contrast, in this case, the Paragraph III distribution of personal property contemplates decedent's husband predeceasing her, and Paragraph IV(A) includes the

condition, "If I am survived by," which contemplates the occurrence of the opposite condition, "If I am not survived by." Although they are correct about the factual distinction, that does not mean that the language of the will is ambiguous.

■■ The language gives rise to the question of whether decedent may have intended to make additional provisions. However, the language that *was* used is unambiguous and does not require or permit extrinsic evidence for its proper construction.[2] In addition, we do not find that the absence of a separate and distinct residuary clause creates an ambiguity.

The Davises also argue that this case is distinguishable from *Murphy*, because the will there provided for a default to an intestacy distribution in case the trust failed. Although the will in *Murphy* was more complete than the will in this case, the distinction does not create an ambiguity that would allow extrinsic evidence to be considered. In this case, as in *Murphy*, the trust failed and any gift through the trust lapsed. The court properly declined to consider the extrinsic evidence.

■ *Amici curiae* offer the argument of mistake based on "clerical error" as a basis for admitting extrinsic evidence of decedent's intention. In *Scarlett v. Hopper*, 110 Or App 457, 461, 823 P2d 435 (1992), we found it unnecessary to decide whether evidence of intended language in a will may ever be inserted if it was omitted because of "clerical error." It is also unnecessary to decide that question here.

In this case, the attorney testified that an entire paragraph must have been deleted by his secretary from the wills of decedent and her husband. Evidence of the intended contents of that paragraph includes the Specific Bequests section of the Masons' Will Information Sheet designating a distribution of one-half between two persons and one-half distributed among four persons, and a note handwritten by

---

[2] Other courts have been willing to denote inconsistencies as ambiguities and therefore to admit extrinsic evidence. The Illinois Court of Appeals admitted extrinsic evidence to construe a residuary clause that distributed a one-eighteenth share to each of nine beneficiaries. *Estate of Gibson*, 19 Ill App 3d 550, 312 NE2d 1 (1974). In *Gibson*, although the language was clear, the court held that there was an ambiguity, because one-half of the residuary estate remained undisposed. *See also* Langbein & Waggoner, *Reformation of Wills on the Ground of Mistake: Change in the Direction in American Law?*, 130 U Pa L Rev 521, 526 (1982).

Laura Mason with four names on it. In addition, he recalled that the Masons wanted half of the estate to go to the husband's family and half to the wife's family after the survivor of the couple died. He also personally recalled that the deleted material was a residuary paragraph with a distribution exactly the same as written in the Will Information Sheet. There is no copy of an earlier version of the will or of the ostensibly missing paragraph. We have not been presented with language that we could insert into the will. Instead, we are asked to construe language from notes and recollection. We do not find these circumstances to constitute "clerical error."

Affirmed.